UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:22-00051 |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| GREGORY MICHAEL VOGEL | ) | 18 U.S.C. § 1343 |
| a/k/a GREGORY MICHAEL SCHNEIDER | ) | 18 U.S.C. § 1957 |

# INDICTMENT

COUNTS ONE THROUGH EIGHT

THE GRAND JURY CHARGES:

At all times material to this Indictment:

Introduction

1.  **GREGORY MICHAEL VOGEL**, also known as "Gregory Michael Schneider," primarily lived in Gallatin and Hendersonville, Tennessee.

2.  **VOGEL** represented himself to be an entrepreneur, who owned and operated multiple companies and business ventures.

The Scheme

3.  Beginning no later than April 2015, and continuing until at least May 2019, in the Middle District of Tennessee and elsewhere, **VOGEL** devised and intended to devise a scheme to defraud and to obtain money from investors by means of materially false pretenses, representations, and promises, and by omissions and acts of concealment of the scheme, and in furtherance thereof used interstate wires, which scheme is described in the following paragraphs.

4.  It was part of the scheme that **VOGEL** would solicit individuals to make investments with **VOGEL** and his company in foreign currency exchange websites and proprietary software (hereinafter "forex websites"). **VOGEL** claimed that these forex websites would generate

substantial revenue. **VOGEL** further claimed that the websites would provide investors with thousands of dollars in monthly profits, and then eventually would be sold to a third party so that **VOGEL** and the investor could both realize an even greater return on the investment.

5. It was further part of the scheme that **VOGEL** communicated with prospective investors and current investors via the internet, email, telephone, text message and other messaging platforms, and in person in order to convince and persuade investors to enter contractual agreements with **VOGEL** to purchase a 50% ownership stake in one or more forex websites.

6. It was further part of the scheme that **VOGEL** induced investors to send **VOGEL** money by making an investment "pitch" to them. **VOGEL's** solicitation of investors included materially false and fraudulent representations about how the investments would work, the success of **VOGEL's** other forex websites, and the steps **VOGEL** and his company would take to ensure the success of the investor's forex website investment. For example, **VOGEL** made the following fraudulent representations:

   a. That the investor would have a 50% ownership interest in the forex website and **VOGEL** and his company would have the other 50% ownership interest.

   b. That **VOGEL** and his company would keep the 50% ownership interest in the investor's forex website to assure investors that the websites were developed and operated as promised.

   c. That the investment in **VOGEL's** business and forex websites was guaranteed, and **VOGEL** and his company would buy back the investor's share if the investor was dissatisfied with their investment.

   d. That **VOGEL** provided investors with false information regarding the success of **VOGEL's** other forex website investments and investors.

2

e. That **VOGEL** provided and entered into a "Software Creation and Licensing Agreement" contract with investors, in which **VOGEL** and his company agreed to follow certain terms and conditions.

7. It was further part of the scheme that **VOGEL** induced investors to make investments in **VOGEL's** forex websites by omitting and concealing material information about **VOGEL's** background and investment history, **VOGEL's** management of the forex websites, **VOGEL's** breach of promises and contractual provisions, and the actual ownership structure of the forex websites. For example, **VOGEL** omitted and concealed the following material information:

a. That **VOGEL** and his company already had divested **VOGEL's** 50% interest in the investor's forex website and sold **VOGEL's** interest to a different investor.

b. That **VOGEL** and his company subsequently were selling **VOGEL's** remaining 50% interest in the investor's forex website to a different investor.

c. That **VOGEL**, under his prior name "GREGORY MICHAEL SCHNEIDER," had been sued by investors for a previous investment offering and was found liable for committing fraud, breach of fiduciary duty, and conversion, among other acts. And that, as a result, **VOGEL** is permanently enjoined from soliciting or providing any business investments or investment advice in the future.

d. That **VOGEL**, under his prior name "GREGORY MICHAEL SCHNEIDER," had been sued by the Commodity Futures Trading Commission ("CFTC") and entered into a consent order in which he was permanently enjoined from trading or participating in certain transactions supervised by the CFTC.

8. It was further part of the scheme that **VOGEL** continued to mislead investors

regarding their investments in **VOGEL's** forex websites by withholding information about the status of the websites and their investments.

9. **VOGEL** also repeatedly engaged in "lulling" conduct to delay investors from taking action or requesting a return of their investment. **VOGEL's** conduct included, but was not limited to, the following: making excuses for the lack of revenue generated by the forex websites, claiming that additional capital was needed to make the forex websites successful, providing occasional payments to investors, promising investors they would receive future payments for their investments, offering investors new and different investment opportunities, proposing new contractual agreements to investors, and entering into "Website Purchase Agreements" to repay investors within a certain specified time period.

10. As a result of the foregoing scheme, **VOGEL** and his businesses received investments totaling over $1,000,000 from more than a dozen investors. After receiving these investments, **VOGEL** frequently would have the money moved to other bank accounts. **VOGEL** has converted much of the investors' money for his own personal use and/or used it for purposes other than to which the investors agreed.

## The Wire Communications

11. On or about the dates listed in the chart below, in the Middle District of Tennessee and elsewhere, **VOGEL**, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, sounds, and pictures, as described below for each count, each transmission constituting a separate count:

| Count | Date | Description of Interstate Wire |
|---|---|---|
| 1 | February 27, 2017 | $32,990 from Victim E.P. in Canada to **VOGEL's** business bank account in Tennessee. |

4

| Count | Date | Description of Interstate Wire |
|---|---|---|
| 2 | April 20, 2017 | $15,000 from Victim T.D. in Texas to **VOGEL's** business bank account in Tennessee. |
| 3 | May 10, 2017 | $100,000 on behalf of Victim G.M. in Connecticut to **VOGEL's** business bank account in Tennessee. |
| 4 | May 11, 2017 | $20,000 on behalf of Victim G.M. in Connecticut to **VOGEL's** business bank account in Tennessee. |
| 5 | May 31, 2017 | $90,000 on behalf of Victim G.M. in Connecticut to **VOGEL's** business bank account in Tennessee. |
| 6 | June 5, 2017 | $50,000 from Victim G.M. in Connecticut to **VOGEL's** bank business account in Tennessee. |
| 7 | October 11, 2017 | Email from **VOGEL** to Victims D.B. and M.B. regarding his investment pitch for website and software idea |
| 8 | February 9, 2018 | Email from Victim G.M. to **VOGEL** requesting update on G.M.'s investments |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE

THE GRAND JURY FURTHER CHARGES:

12. The allegations set forth in paragraphs 1 through 11 above are hereby reincorporated by reference as if fully set forth herein.

13. On or about June 8, 2017, in the Middle District of Tennessee, **VOGEL** did knowingly engage in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, to wit: payment of $120,000 to A.V. via U.S. Bank Cashier's Check No. 1725509165 in order to subsequently use a portion of that money to make a down payment on real property located on Lake Valley Road, Hendersonville, Tennessee, which represented criminal proceeds from wire fraud, in violation of 18 U.S.C. § 1343.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATION

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

2. Upon conviction of any one of Counts One through Eight of this Indictment, **GREGORY MICHAEL VOGEL** shall forfeit pursuant to Title 18, United States Code, Secion 981(a)(1)(C) by Title 28 United States Code, Section 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, or a conspiracy to commit such offense(s), including but not limited to a money judgment in the amount of at least $1,177,540.00 representing the value of the proceeds of the scheme and artifice to defraud as set forth in the Counts One through Eight.

3. Upon conviction of Count Nine of this Indictment, **VOGEL** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in or traceable to a violation of Title 18, United States Code, Section 1957, as charged in Count Nine of the Indictment.

4. If any such property, as a result of any act or omission of **VOGEL**:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of **VOGEL**, up to the value of said money judgment sought for forfeiture herein.

A TRUE BILL

███████████████████

FOREPERSON

MARK H. WILDASIN
UNITED STATES ATTORNEY

*/s/ Chris Suedekum*

CHRIS SUEDEKUM
ASSISTANT UNITED STATES ATTORNEY